# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

**DOMINIQUE GIPSON,**

    **Plaintiff,**

    **v.**

**BEAR COMMUNICATIONS, LLC,**

    **Defendant.**

Case No. 16-2123-JAR-JPO

## MEMORANDUM AND ORDER

This is an employment discrimination case alleging claims under the Americans with Disabilities Act ("ADA"), as amended by the ADA Amendments Act of 2008 ("ADAAA"), and a claim of worker's compensation retaliation under Kansas law. Before the Court is Defendant Bear Communications, LLC's Motion to Dismiss All Counts of Plaintiff's Petition (Doc. 7). In responding to the motion, Plaintiff Dominque Gipson alternatively moves for leave to amend (Doc. 11), and attaches a proposed First Amended Complaint for Damages.[1] The motions are fully briefed and the Court is prepared to rule. As described more fully below, the Court grants in part and denies in part the motion for leave to amend. As such, Defendant's motion to dismiss the original petition is moot.

## I.  Standards

Defendant moves for dismissal of all counts in the original Petition under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. In order to pass muster under Rule 12(b)(6), "the complaint must give the court reason to believe that *this* plaintiff has a

---

[1] Doc. 11-1, Ex. A.

reasonable likelihood of mustering factual support for *these* claims."[2] The plausibility standard does not require a showing of probability that a defendant has acted unlawfully, but requires more than "a sheer possibility."[3] "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[4] Finally, the Court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[5]

The Supreme Court has explained the analysis as a two-step process. For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but] we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[6] Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[7] Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[8] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[9] "While the Rule 12(b)(6) standard does not require that Plaintiff establish

---

[2] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[3] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[4] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

[5] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[6] *Id.*

[7] *Id.* at 679.

[8] *Id.*

[9] *Id.* at 678.

a prima facie case in [the] complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim."[10]

If the Court on a Rule 12(b)(6) motion looks to matters that were not attached to the complaint or incorporated into the complaint by reference, it generally must convert the motion to a Rule 56 motion for summary judgment.[11]  However, the court may consider documents which are referred to in the complaint if they are central to the plaintiff's claim and the parties do not dispute their authenticity.[12]

Under Rule 15(a), leave to amend a complaint is freely given when justice so requires.[13] A party is typically granted leave to amend under this rule unless there is "a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendment previously allowed, or futility of amendment."[14]  A proposed amendment is futile if the amended complaint would be subject to dismissal.[15]  Plaintiff has moved for leave to amend and attaches a proposed amended complaint that adds additional factual matter to his claims for relief.  Defendant has not made a showing of undue delay, undue prejudice, or bad faith or dilatory motive.  Instead, Defendant argues that the proposed amendments would be futile.  The Court therefore considers whether the facts alleged in the proposed pleading would be futile, and therefore subject to dismissal under Fed. R. Civ. P. 12(b)(6).

---

[10]*Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012).

[11]Fed. R. Civ. P. 12(d); *GFF Corp. v. Associated Wholesale Grocers,* 130 F.3d 1381, 1384–85 (10th Cir. 1997).

[12]*See Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007); *GFF Corp.*, 130 F.3d at 1384–85.

[13]Fed. R. Civ. P. 15(a)(2).

[14]*Duncan v. Manager, Dep't of Safety, City & Cnty. of Denver*, 397 F.3d 1300, 1315 (10th Cir. 2005).

[15]*Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278, 1288 (10th Cir. 2008).

**II.     Facts Alleged in Proposed First Amended Complaint**

The following facts are alleged in Plaintiff's proposed First Amended Complaint and are accepted as true for purposes of deciding these motions. Plaintiff Dominique Gipson was employed by Defendant Bear Communications, LLC ("Bear") as an installer and dispatcher beginning in August 2012. He worked in each job role 50% of the time. As an installer, Plaintiff's job duties included carrying, climbing, and maneuvering an eighty-pound load and a twenty-eight foot extension ladder; installing and repairing cable inside and outside of residential homes; and sitting, standing, or crouching for long periods of time. As a dispatcher, Plaintiff's job duties included sitting at a desk for an entire shift answering phones and keeping track of the technician. Plaintiff was paid more as an installer than as a dispatcher. During his three years at Bear, Plaintiff never received any write-ups or discipline.

On March 26, 2015, Plaintiff stepped in a ditch while carrying a ladder at a client's residence and heard a pop in his back. He immediately went home and rested. Later that evening, Plaintiff woke up and could not move. He went to the emergency room at Shawnee Mission Medical Center and was diagnosed with a lumbar strain. Plaintiff immediately reported the injury to his supervisor that evening, who advised Plaintiff to get a drug screen the next morning from Bear's workers compensation doctor.

On March 27, 2015, Plaintiff submitted to a drug test, which he passed, and the workers compensation doctor confirmed Plaintiff's lumbar sprain and prescribed physical therapy. Plaintiff attended physical therapy later that day, and again on March 30, 2015. After the March 30 session, a physical therapist released Plaintiff to return to work. At some point between March 27, 2015 and April 15, 2015, Plaintiff requested time off from work to attend medical appointments.

On April 1, 2015, Plaintiff was scheduled to work from 1:00 p.m. to 9:00 p.m.  The District Manager, Robert Dale, told Plaintiff he also had to work a shift from 7:00 a.m. to 1:00 p.m. that day.  Dale told Plaintiff that refusal to work both shifts would be considered a resignation.  Plaintiff worked both shifts.

On April 2, 2015, Dale and the Office Manager, Monica Fineley, told Plaintiff that he would be working as a Dispatcher only going forward, a position for which he made less money.

Defendant did not pay Plaintiff holiday pay for Easter 2015.

On April 14, 2015, Defendant removed Plaintiff from the schedule.  Fineley told him that Defendant had hired a new dispatcher that Plaintiff was to train, and asked Plaintiff to give the new dispatcher his keys.

On April 15, 2015, Dale discussed Plaintiff's workers compensation claim with him.  Dale questioned Plaintiff about his back injury because the schedule did not reflect that Plaintiff was at the residence where he claimed to be when he was injured.  Plaintiff explained to him that the job had been rescheduled because he could not access the proper equipment because of foliage.  Plaintiff looked at the paperwork and noticed that Fineley had included the incorrect date and address for the job—Plaintiff had not signed the paperwork.  Nonetheless, Dale told Plaintiff: "You are terminated for filing an invalid workers' compensation claim."

Plaintiff's lumbar strain caused him back pain that made him unable to sleep, made it difficult for Plaintiff to stand or sit for long periods of time, and made it difficult for him to bend over or lift.

5

### III. Discussion

#### A. Disability Discrimination Claim

Count II alleges a claim under the ADA for disability discrimination. To establish a prima facie case of discrimination under the ADA, Plaintiff must show (1) he is disabled as defined under the ADAAA; (2) he is qualified, with or without reasonable accommodation by the employer, to perform the essential functions of the job; and (3) he was discriminated against because of his disability."[16] Defendant moves to dismiss, arguing that Plaintiff has failed to plausibly allege facts that would support any of these elements.

The Americans with Disabilities Act ("ADA"), first enacted in 1990, was amended in 2008 by the ADAAA. The stated goal of the ADAAA was to ensure that "[t]he definition of disability . . . be construed in favor of broad coverage."[17] The amended definition of disability states: "[t]he term 'disability' means, with respect to an individual—(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."[18] The parties in this case dispute whether Plaintiff has a disability as defined under all three subsections of the ADAAA.

To show actual disability under subsection (A), a person "must (1) have a recognized impairment, (2) identify one or more appropriate major life activities, and (3) show the impairment substantially limits one or more of those activities."[19] This third prong requires

---

[16] *Adair v. City of Muscogee*, –F.3d–, 2016 WL 3034084, at *5 (10th Cir. May 26, 2016).

[17] ADA Amendments Act of 2008, Pub. L. No. 110-325 § 4(a), 122 Stat. 3553 (codified at 42 U.S.C. § 12101 et seq.).

[18] 42 U.S.C. § 12102(1).

[19] *Felkins v. City of Lakewood*, 774 F.3d 647, 650 (10th Cir. 2014) (quoting *Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1142 (10th Cir. 2011)).

Plaintiff to show that he is limited in his major life activity "as compared to most people in the general population."[20]  This may require consideration of

> the difficulty, effort, or time required to perform a major life activity; pain experienced when performing a major life activity; the length of time a major life activity can be performed; and/or the way an impairment affects the operation of a major bodily function. In addition, the non-ameliorative effects of mitigating measures, such as negative side effects of medication or burdens associated with following a particular treatment regimen, may be considered when determining whether an individual's impairment substantially limits a major life activity.[21]

Defendant argues that Plaintiff has failed to plead facts to show that his lumbar strain substantially limited any major life activity.  The Court agrees with Plaintiff that the cases upon which Defendant relies were decided at the summary judgment stage, where the courts went beyond the pleadings and decided whether there was a genuine issue of material fact on this element of the plaintiffs' claim.[22]  Indeed, the considerations for determining whether a plaintiff has shown that he is substantially limited in one or more major life activities requires a fact intensive analysis.  Plaintiff alleges that the lumbar strain made him unable to sleep, made it difficult for him to stand or sit for long periods of time, and made it difficult for him to bend over or lift.  These are all considered major life activities under the statute.[23]  Plaintiff further alleges that his disability required him to undergo physical therapy, and that Bear supervisors agreed that Plaintiff should perform only in the role of dispatcher.[24]  While Plaintiff may ultimately be unable to prove that his lumbar strain is a disability, at this stage Plaintiff's allegations of disability are sufficient to pass muster under Fed. R. Civ. P. 12(b)(6).

---

[20] 29 C.F.R. § 1630.2(j)(4)(i).

[21] *Id.* § 1630.2(j)(4)(ii).

[22] *See, e.g.*, *Sperry v. Maes*, 592 F.3d 688, 692 (10th Cir. 2014); *Clarke v. Mortg. Lenders of Am., LLC*, No. 14-2526-JWL, 2016 WL 1030039 (D. Kan. Mar. 10, 2016); *Vaughan v. World Changers Church Int'l, Inc.*, No. 1:13-cv-0746-AT, 2014 WL 4978439 (N.D. Ga. Sept. 16, 2014).

[23] 42 U.S.C. § 12102(2)(A); 29 C.F.R. § 1630.2(i)(1)(i).

[24] Because the Court finds that Plaintiff has alleged sufficient facts to plead an actual disability, it need not consider whether the facts are sufficient to demonstrate a regarded-as, or record-of disability.

Next, Defendant argues that Plaintiff alleges insufficient facts to support the causation element of a discrimination claim. The Court disagrees. The First Amended Complaint alleges that Plaintiff was terminated because of his disability, pointing to the temporal proximity between the onset of his disability and his termination. He further alleges that the reason provided by Defendant—that he falsified his disability claim—was false, and therefore a pretext for disability discrimination. At this early stage of the proceedings, these allegations sufficiently support the causation element of an ADA discrimination claim.

### B.   Failure to Accommodate Claim

Count I alleges a claim under the ADA for failure to accommodate Plaintiff's disability. The elements of a failure to accommodate claim under the ADA are: (1) Plaintiff is disabled, as defined by the ADAAA; (2) he is qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) he suffered discrimination as a result of his disability.[25] As already discussed, the Court finds that Plaintiff has alleged enough facts to plausibly allege disability. Defendant also argues that Plaintiff did not need a reasonable accommodation to perform his job duties according to the facts alleged, and that the facts alleged do not demonstrate that he requested and was denied a reasonable accommodation.

Whether Plaintiff is qualified to perform the essential function of his job, with or without accommodation, is a mixed question of law and fact.[26] It is a two-part inquiry: (1) whether Plaintiff can perform the essential functions of the job; and (2) if he is unable to perform the essential functions of his job, whether any reasonable accommodation by the employer would enable him to perform those functions.[27] Plaintiff appears to misunderstand this standard. He

---

[25]*Koessel v. Sublette Cnty. Sheriff's Dep't*, 717 F.3d 736, 742 (10th Cir. 2013).

[26]*Id.*

[27]*Hawkins v. Schwan's Home Serv., Inc.*, 778 F.3d 877, 887–88 (10th Cir. 2015).

8

alleges in the First Amended Complaint that he could perform the essential function of his job *before* the onset of his disability, citing his lack of disciplinary record with Defendant. But he does not allege facts to support that he was qualified after the onset of his disability, as opposed to a formulaic recital. The facts he does allege are inconsistent. On one hand, Plaintiff alleges that his disability interferes with major life activities such as lifting, bending, and sitting—all functions that he also alleges are required by his jobs as installer and dispatcher. On the other hand, Plaintiff alleges that his physical therapist released him back to work with no restrictions after two physical therapy sessions.

Additionally, Plaintiff has failed to allege that he requested a reasonable accommodation that was denied. Plaintiff alleges that he requested time off to attend medical appointments, but there is no further explanation of this request, such as when or to whom it was made. If Plaintiff is referring to physical therapy sessions, the proposed pleading alleges that he was able to attend both sessions and that he was released to work after the second session. And there are no facts alleged regarding Defendant's response to the request, beyond the formulaic statement that "Defendant refused to engage in the interactive process."[28] While it is true that the ADA regulations "envision an interactive process that requires participation by both parties"[29] in order to identify a reasonable accommodation, the failure to engage in the interactive process "is not an independent basis for liability under the ADA."[30] In order to trigger the interactive process, an employee must give notice to the employer "of the employee's disability and any resulting limitations, and expressing a desire for reassignment if no reasonable accommodation is possible

---

[28] Doc. 11-1 ¶ 54.

[29] *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1171 (10th Cir. 1999) (quoting *Templeton v. Neodata Servs., Inc.*, 162 F.3d 6174, 619 (10th Cir. 1998)).

[30] *Valdez v. McGill*, 462 F. App'x 814, 819 n.5 (10th Cir. 2012).

in the employee's existing job."[31]  While Plaintiff alleges that he alerted Defendant to his alleged disability, there is no allegation that Defendant was notified of any work limitations; he instead alleges that the physical therapist released him back to work.  In sum, the Court finds that the proposed amended complaint fails to allege sufficient facts to support a plausible claim that Defendant failed to reasonably accommodate Plaintiff's disability under the ADA.

### C.    ADA Retaliation

Count III alleges a claim of retaliation under the ADA.  The elements of a prima facie claim of retaliation under the ADA are: (1) the employee engaged in protected opposition to discrimination; (2) the employee suffered an adverse action during or after his protected opposition that a reasonable employee would have found materially adverse; and (3) a causal connection exists between the protected activity and the materially adverse action.[32]

Defendant first moves to dismiss this claim on the basis that Plaintiff has not alleged a disability.  As previously discussed, however, Plaintiff has alleged sufficient facts that, if true, could establish disability under the Act.  Additionally, Plaintiff need not allege that he was disabled in order to support a retaliation claim under the ADA, "as long as he had a 'reasonable, good faith belief the statute ha[d] been violated."[33]  Plaintiff has pled sufficient facts under this standard.  He alleges that he cannot sleep, and that he cannot stand or sit for long periods of time.  Whether he can ultimately demonstrate that he suffered a disability under the statute will depend on the evidence, but the pleadings sufficiently allege that he reasonably believed that he was disabled.

---

[31]*Smith*, 180 F.3d at 1171–72 (footnote omitted).

[32]*Proctor v. UPS*, 502 F.3d 1200, 1208 (10th Cir. 2007).

[33]*Wehrley v. Am. Family Mut. Ins. Co.*, 513 F. App'x 733, 740 (10th Cir. 2013) (quoting *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1264 (10th Cir. 2001)).

Second, Defendant argues that Plaintiff fails to allege that he engaged in protected activity. Plaintiff argues that he engaged in protected activity by reporting his disability, and by requesting a reasonable accommodation. A request for reasonable accommodation is protected activity under the ADA.[34] While the facts pled may be insufficient to demonstrate that Defendant denied Plaintiff's request for a reasonable accommodation, they are sufficient, if assumed to be true, to demonstrate Plaintiff engaged in protected opposition to discrimination in the first instance.

Finally, Defendant argues that Plaintiff has not alleged facts that demonstrate a plausible claim that he was treated differently, and then terminated because of his protected opposition to discrimination. Plaintiff alleges that he was treated differently after requesting time off work to attend physical therapy when he was required to work a double shift or lose his job. Plaintiff further alleges that he was denied holiday pay and removed from the work schedule. Two weeks later, after questioning Plaintiff about his report, Defendant terminated him. The Court finds that these allegations are sufficient under *Twombly* and *Iqbal* to show causation.

### D.     Workers' Compensation Retaliation Claim

Kansas is an at-will employment jurisdiction, meaning that absent an express or implied contractual agreement, an employer is free to terminate employment at will.[35] The Kansas Supreme Court, however, has recognized an exception to the at-will employment doctrine for a common law tort of retaliatory discharge.[36] The exception applies "to protect a strongly held state public policy from being undermined."[37] This common law tort includes retaliatory

---

[34] *Id.*

[35] *Flenker v. Willamette Indus., Inc.*, 967 P.2d 295, 298 (Kan. 1998) (citing *Johnston v. Farmers Alliance Mutual Ins. Co.*, 545 P.2d 312 (Kan. 1976)).

[36] *Id.*

[37] *Campbell v. Husky Hogs, L.L.C.*, 255 P.3d 1, 4 (Kan. 2011).

discharge for exercising rights under the Kansas Workers' Compensation Act.[38] Elements of the prima facie case are:

> (1) The plaintiff filed a claim for workers compensation benefits or sustained an injury for which he or she might assert a future claim for such benefits; (2) the employer had knowledge of the plaintiff's workers compensation claim injury; (3) the employer terminated the plaintiff's employment; and (4) a causal connection existed between the protected activity or injury and the termination.[39]

There can be no serious dispute that Plaintiff has sufficiently alleged facts to support the first three elements of this claim. Defendant moves to dismiss on the basis that Plaintiff did not allege facts to support the causal connection element of Plaintiff's claim. But again, Plaintiff alleges that he was terminated within a few weeks of a workplace accident for which he might assert a claim for workers compensation benefits. He further alleges that Dale told him that he was being terminated "for filing an invalid workers' compensation claim."[40] At this stage of the proceeding, Plaintiff has alleged sufficient facts to state a plausible claim for retaliatory discharge under Kansas law.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion for Leave to Amend (Doc. 11) is **granted in part and denied in part**. Plaintiff shall file the proposed First Amended Complaint as to Counts II, III, and IV. The motion is denied as futile on the reasonable accommodation claim alleged in Count I.

**IT IS FURTHER ORDERED BY THE COURT** that Defendant's Motion to Dismiss (Doc. 7) is denied as **moot**.

**IT IS SO ORDERED.**

Dated: July 13, 2016

---

[38]*Pfeifer v. Fed. Ex. Corp.*, 304 P.3d 1226, 1232 (Kan. 2013).

[39]*Gonzalez-Centeno v. N. Cent. Kan. Re'l. Juvenile Det. Facility*, 101 P.3d 1170, 1177 (Kan. 2004).

[40]Doc. 8-1 at 3.

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE